# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC., | Civil Action No.: |
| Plaintiff, | |
| vs. | |
| VARIOUS JOHN AND JANE DOES, and VARIOUS XYZ CORPORATIONS, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S <u>EX PARTE</u> MOTION FOR TEMPORARY RESTRAINING ORDER; ORDER FOR SEIZURE OF COUNTERFEIT MARKED GOODS; AND ORDER TO SHOW CAUSE WHY A PRELIMINARY INJUNCTION SHOULD NOT ISSUE**

**K&L Gates LLP**
Loly G. Tor
One Newark Center, Tenth Floor
Newark, NJ 07102
P: (973) 848-4000
F: (973) 848-4001
loly.tor@klgates.com
Attorneys for Plaintiff World
Wrestling Entertainment, Inc.

303147235 v1

## <u>TABLE OF CONTENTS</u>

INTRODUCTION..................................................................................................1

FACTUAL BACKGROUND ................................................................................3

ARGUMENT ......................................................................................................10

A.   **WWE IS ENTITLED TO A TRO AND SEIZURE ORDER
     AGAINST SALES OF GOODS BEARING COUNTERFEIT
     MARKS. ...................................................................................................11**

     1.   There Is A Substantial Likelihood That WWE Will Prevail On
         The Merits Of Its Claims...................................................................11
     2.   WWE Will Suffer Irreparable Injury. ................................................14
     3.   The Threatened Injury To WWE Outweighs Any Potential
         Harm To Defendants. .........................................................................15
     4.   Injunctive Relief Will Serve The Public Interest. .............................16
     5.   WWE is Entitled to Ex Parte Relief in these Circumstances.............18

B.   **A NATIONWIDE INJUNCTION IS APPROPRIATE WHERE
     DEFENDANTS ENGAGED IN THE COUNTERFEITING
     ACTIVITY OVER THE COURSE OF A NATIONWIDE
     SERIES OF LIVE EVENTS......................................................................19**

CONCLUSION...................................................................................................24

BOND .................................................................................................................25

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

7-Eleven, Inc. v. Upadhyaya,
No. 12-5541, 2013 WL 765661 (E.D. Pa. Mar. 1, 2013) ...................................14

Am. Greetings Corp. v. Dan-Dee Imports,
619 F. Supp. 1204 (D.N.J. 1985) ........................................................................15

Araca Merchandise L.P. v. Does,
182 F.Supp.3d 1290 (S.D. Fla. 2016) ................................................................19

Araca v. John Does 1-100,
Case No. 4:16-cv-01194 (S.D. Tex. 2016) ........................................................19

Bravado Int'l Grp. Merch. Servs., Inc. v. John Does 1-100,
No. 12-7438 (D.N.J. 2012) ...................................................................................2

Bravado Int'l Grp. Merch. Servs., Inc. v. John Does 1-100,
No. 2:11-cv-06351-DMC-MF (D.N.J. 2011) .......................................................2

Brockum Co. v. Blaylock,
729 F. Supp. 438 (E.D. Pa. 1990) ......................................................................16

Camel Hair & Cashmere Inst. of Am. v. Associated Dry Goods Corp.,
799 F.2d 6 (1st Cir. 1986) ..................................................................................15

Cartier Int'l A.G. v. Daniel Markus, Inc.,
No. 10-1459, 2013 WL 5567150 (D.N.J. Oct. 8, 2013) ....................................13

Dastar Corp. v. Twentieth Century Fox Film Corp.,
539 U.S. 23 (2003) .............................................................................................11

Ferring Pharm. Inc., v. Watson Pharm., Inc.,
765 F.3d 205 (3d Cir. 2014) ..............................................................................14

Gore v. Various John Does,
No. 98-CIV-7576 (DLC), 1998 WL 778374 (S.D.N.Y. Nov. 6,
1998) ...................................................................................................................20

303147235 v1

Kos Pharms., Inc. v. Andrx Corp.,
   369 F.3d 700 (3d Cir. 2004) .................................................................11, 12, 17

Microsoft Corp. v. Silberstein,
   No. 06-3206 (HAA), 2009 WL 10690512 (D.N.J. Jan. 29, 2009) .....................14

Mister Softee, Inc. v. Amonollahi,
   No. 2:14-cv-01687 (KM) (MCA) 2014 WL 3110000 (D.N.J. July
   1, 2014) ...........................................................................................................14

Nike, Inc. v. Eastern Ports Custom Brokers, Inc.,
   No. 2:11-cv-4390-CCC-MF, 2018 WL 3472628 (D.N.J. July 19,
   2018) .........................................................................................................12, 15

Omega Importing Corp. v. Petri-Kine Camera Co.,
   451 F.2d 1190 (2d Cir. 1971) ...........................................................................15

Plant v. Does,
   19 F. Supp. 2d 1316 (S.D. Fla. 1998) ...............................................................19

Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C.,
   83 F. Supp. 2d 810 (S.D. Tex. 1999) ................................................................16

Regal Knitwear Co. v. NLRB,
   324 U.S. 9 (1945).............................................................................................22

Rock Tours, Ltd. v. Does,
   507 F. Supp. 63 (N.D. Ala. 1981).....................................................................19

Rockwell Graphic Sys., Inc. v. DEV Indus.,
   91 F.3d 914 (7th Cir. 1996) .............................................................................22

Sabinsa Corp. v. Creative Compounds, LLC,
   609 F.3d 175 (3d Cir. 2010) .............................................................................12

SKS Merch., LLC v. Barry,
   233 F. Supp. 2d 841 (E.D. Ky. 2002)......................................................*passim*

In re Vuitton et Fils S.A.,
   606 F.2d 1 (2d Cir. 1979) .................................................................................18

Westchester Fire Ins. Co. v. Global Real Constr., LLC,
   No. 09-207, 2009 WL 137414 (D.N.J. Jan. 20, 2009) .......................................11

3

<u>World Wrestling Ent., Inc. v. John Does 1-100</u>,
No. 13-01918 (D.N.J. 2013) ...................................................................2

<u>World Wrestling Ent., Inc. v. Unidentified Parties</u>,
770 F.3d 1143 (5th Cir. 2014) ...................................................*passim*

**Statutes**

15 U.S.C. § 1051 .....................................................................*passim*

15 U.S.C. § 1115(a) ...........................................................................12

15 U.S.C. § 1116 ........................................................................20, 22

15 U.S.C. § 1116(a) ...........................................................................20

15 U.S.C. § 1116(d) ..................................................................*passim*

**Other Authorities**

Fed. R. Civ. P. 65(b) .........................................................................18

Fed. R. Civ. P. 65(d) .........................................................................22

MCCARTHY ON TRADEMARKS § 30:34 .................................................2

MCCARTHY ON TRADEMARKS § 27:18 ...............................................12

## INTRODUCTION

Plaintiff World Wrestling Entertainment, Inc. ("WWE") respectfully submits this memorandum of law in support of its <u>Ex Parte</u> Motion for Temporary Restraining Order, Order for Seizure of Counterfeit Marked Goods and Order to Show Cause Why a Preliminary Injunction Should Not Issue ("Motion"), filed concurrently herewith.  WWE also has filed concurrently herewith a Verified Complaint seeking relief pursuant to the Lanham Act, 15 U.S.C. § 1051, <u>et</u> <u>seq.</u>, including the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), as a result of Defendants' unlawful manufacture, distribution and/or sale of counterfeit merchandise bearing unauthorized copies of WWE's famous trademarks and service marks.  WWE seeks this relief because it is the only way to stop transient counterfeiters and bootleggers from plaguing WWE's WrestleMania® 35 event occurring at Met Life Stadium in the East Rutherford, New Jersey on April 7, 2019, as well as the remainder of its 2019-2020 Live Events.

The leading treatise on trademark and unfair competition law has recognized:

> In cases of outright counterfeiting by marginal imitators, traditional civil remedies have proven largely ineffective. The retailer of counterfeit goods is often a vendor peddling memorabilia merchandise at a rock concert, a transient street vendor or a merchant at a flea market. The counterfeiter or its distributor who is served with a civil summons to appear at a hearing on a preliminary

> injunction will either disappear or quickly dispense of
> existing inventory of counterfeit items [leaving the
> trademark owner without an effective remedy].

5 J. Thomas McCarthy, MCCARTHY ON TRADEMARKS AND UNFAIR COMPETITION, §
30:34 (4th ed. 2008).   For this reason, among others, Congress passed the
Trademark Counterfeiting Act of 1984, incorporated as Section 34(d) of the
Lanham Act, 15 U.S.C. § 1116(d), which expressly authorizes the seizure of
counterfeit goods without prior notice.  Defendants John and Jane Does and XYZ
Corporations are street merchants and suppliers who are profiting wrongfully from
the sale of merchandise bearing counterfeits of trademarks and service marks
owned exclusively by WWE.  WWE brings this action to stop the sale of such
counterfeit merchandise, which, in addition to damaging WWE's valuable
goodwill, also presents a safety hazard to the public.

The relief that WWE seeks herein has been repeatedly endorsed by courts
throughout the United States, including this Court for WrestleMania® 29 in 2013.
See Orders attached at Exhibit 1 from World Wrestling Ent., Inc. v. John Does 1-
100, No. 13-01918-SRC-CLW (D.N.J. 2013); Verified Complaint ¶ 26.[1]
Additionally, the U.S. Court of Appeals for the Fifth Circuit has endorsed the relief

---

[1] Additionally, this Court has approved similar requests for relief to protect sellers
of authorized merchandise for live touring acts like the WWE including the
Rolling Stones and Kanye West. See Bravado Int'l Grp. Merch. Servs., Inc. v. John
Does 1-100, No. 12-7438 (D.N.J. 2012) (J. Wigenton) (Rolling Stones); Bravado
Int'l Grp. Merch. Servs., Inc. v. John Does 1-100, No. 2:11-cv-06351-DMC-MF
(D.N.J. 2011) (J. Cavanaugh) (Kanye West and Jay-Z).

303147235 v1

WWE requests here in a 2014 published opinion.  See World Wrestling Ent., Inc. v. Unidentified Parties, 770 F.3d 1143 (5th Cir. 2014).  In that opinion, the Fifth Circuit vacated a prior order from the Eastern District of Louisiana that denied WWE's request for an ex parte TRO and Seizure Order, on the grounds that the district court "misinterpret[ed] the statutory requirement" of Section 1116(d) of the Lanham Act.   Id. at 1145.   Considering substantially the same factual circumstances that WWE avers in its Verified Complaint filed concurrently herewith and the same legal authorities described herein, the Fifth Circuit held that "WWE . . . met its burden under section 1116(d), and . . . the orders [TRO and Seizure] sought here should issue."  See id.  For the same reasons that the Fifth Circuit and this Court have previously found that WWE is entitled to relief, WWE now asks this Court to enforce the remedies provided by Congress in 15 U.S.C. § 1116(d) and enter the requested Ex Parte TRO, Order for Seizure of Goods Bearing Counterfeit Marks, and Order to Show Cause Why A Preliminary Injunction Should Not Issue.

## FACTUAL BACKGROUND

Since at least as early as February 1983, WWE, first doing business as the "World Wrestling Federation" and now doing business as "World Wrestling Entertainment," has provided to the public live and televised wrestling-based sports entertainment events and services (the "WWE Wrestling Services").  See

3

Verified Complaint ¶ 10.  In connection therewith, WWE has used, advertised, publicized and presented the WWE Wrestling Services, and related souvenirs, merchandise and other products ("WWE Merchandise") under its WORLD WRESTLING ENTERTAINMENT® mark and certain other service marks and trademarks identified in Exhibits 1 and 2 to the Verified Complaint (collectively, the "WWE Marks").  Id.  Among the marks most important to this action are: (1) WORLD WRESTLING ENTERTAINMENT; (2) WWE; (3) the WWE logo (W); and (4) WRESTLEMANIA.

| Mark | U.S. Trademark Registration Nos. |
|---|---|
| WORLD WRESTLING ENTERTAINMENT | 2,818,358; 2,772,677; 2,757,599; 2,754,499; 2,870,426; 2,902,203; 2,917,910; 3,585,170; 3,585,171 |
| WWE | 2,772,683; 3,056,074; 3,541,936; 4,451,697; 3,538,710; 3,489,357; 3,412,176; 3,412,177; 3,541,956; 3,621,017 |
| WWE Logos | 4,735,547; 4,731,795; 4,735,546; 4,625,255; 4,727,923; 4,675,657; 4,538,209; 4,689,839; 4,689,835; 4,538,210; 4,614,144; 4,645,471; 4,552,144; 2,757,596; 2,754,495; 2,846,450; 2,799,228; 2,751,436; 2,757,597; 2,765,751; 2,751,437; 4,756,090; 3,412,169; 3,412,170; 3,691,588; 4,220,594; 5,291,266 |

| WRESTLEMANIA | 1,432,884; 1,863,534; 2,625,125; 2,881,508; 3,351,858; 3,351,859; 3,727,338; 3,727,339; 4,285,112; 4,780,778; 4,923,842; 5,094,698 |
| --- | --- |

The WWE Marks are well known to the public and have come to identify WWE to the public as the genuine source and sponsor of WWE Wrestling Services and WWE Merchandise.  Id.

The WWE Wrestling Services include the following types of programs:  (1) pay-per-view events; (2) nationally-televised shows; and (3) non-televised events known as "house shows."  Id. ¶ 11.  WWE typically presents WORLD WRESTLING ENTERTAINMENT pay-per-view events throughout the calendar year.  Id. ¶ 12.  WWE's annual marquee pay-per-view event is called "WrestleMania®," which is being held this year in East Rutherford, New Jersey. Id. ¶¶ 3, 11-13.  Starting with the WrestleMania® event, WWE embarks on a multi-city presentation of its live wrestling entertainment events throughout the United States ("WWE's 2019-2020 Live Events"). This year, WWE's WrestleMania® 35 event will take place on April 7 at MetLife Stadium and additional WWE-sponsored activities related to the WrestleMania® 35, such as meet and greets with its Superstars, will occur on April 5 and 6, 2019 in other parts of New Jersey (the

"WrestleMania® 35 Weekend Events").[2]  See id.  WWE's live events are extremely popular with the public and, based on past experience, will draw thousands of fans from all over the United States.  See id. ¶¶ 11-14.  For example, WrestleMania® 34 at the Mercedes-Benz Superdome in New Orleans, Louisiana drew a sold-out crowd of 78,133 spectators from all 50 states as well as 67 foreign countries.  Id.

At and in connection with its live events, as well as in retail stores nationwide and online, WWE sells a large variety of WWE Merchandise featuring the WWE Marks.  Id. ¶ 19.  WWE Merchandise displays prominently the name and logo of the company, its events, its programs, and/or the wrestlers and other personalities involved with the events and programs.  Id.  Examples of WWE Merchandise include, without limitation, T-shirts, jerseys, sweatshirts, caps, hats, belts, sunglasses, key rings, action figures, posters, and DVDs.  Id.  As in the past, WWE will sell a large variety of WWE Merchandise at and in connection with the WrestleMania® 35 Weekend Events, and the other WWE 2019-2020 Live Events across the country.  Id. ¶ 20; see also Declaration of Lauren Dienes-Middlen, Esq. (attached as "Ex. 2" hereto) ¶¶ 3, 35.

Defendants are bootleggers currently engaged in the manufacture,

---

[2] WWE will be hosting additional WrestleMania® 35 weekend events in New York, including WWE's NXT Blacklist, WWE's NXT Takeover New York, WWE's Hall of Fame Brooklyn, WWE's RAW Brooklyn, and WWE's Smackdown Brooklyn.  However, WWE's request for a TRO is limited to events that will take place in this District including WrestleMania® 35 at MetLife Stadium in East Rutherford, New Jersey.

6

distribution and sale of unauthorized merchandise marked with imitations or counterfeits of the WWE Marks ("Counterfeit Merchandise").   See Verified Complaint ¶¶ 1-3, 5.   These bootleggers will be selling the Counterfeit Merchandise at or near the WrestleMania® 35 Weekend Events and WWE's other 2019-2020 Live Events.   See generally Ex. 2.   WWE knows this because it has encountered sellers of Counterfeit Merchandise at prior WWE events, including particularly at prior WrestleMania® events.   In recognition of this recurring pattern of encountering sellers of Counterfeit Merchandise at WWE events, WWE has successfully obtained ex parte TROs from federal courts in this District, New York, Massachusetts, Florida, Texas, Georgia, Louisiana, and California to stop such illegal activity.   See Ex. 3 attached hereto; Ex. 2 ¶¶ 18-33.   In fact, the last time East Rutherford, New Jersey hosted WrestleMania® in 2013, this Court granted WWE's request for ex parte TRO and Seizure Order based on substantially the same facts averred in the Verified Complaint and a substantially similar witness declaration filed concurrently herewith.   See Ex. 1; Verified Complaint ¶ 26; Ex. 2 ¶¶ 15, 16. In addition, the Court entered a nationwide Preliminary Injunction and Order of Seizure which enabled WWE to seize Counterfeit Merchandise at events throughout the United States from different people where the Counterfeit Merchandise used counterfeit WWE Marks and artwork that was identical across the different individuals and cities. See Ex.1; Ex. 2 ¶ 33.

7

Consistent with this Court's granting of a TRO and Seizure Order to WWE in 2013, the Fifth Circuit subsequently held — based on a record substantially similar to the record WWE presents in this case — that WWE was entitled to a TRO and Seizure Order.  <u>World Wrestling Ent., Inc.</u>, 770 F.3d at 1144.  In 2014, the Fifth Circuit vacated a lower court's denial of a TRO and Seizure Order finding that:

> WWE presented evidence establishing that it owns many valuable trademarks and earns significant revenues from the sale of merchandise bearing those marks at live WWE events across the country. The evidence further established that WWE can readily identify the unauthorized designs of counterfeit merchandise and that WWE makes its own merchandise sales directly—it does not license third parties to sell merchandise at live events. WWE alleges that Defendants work as "fly-by-night" counterfeiters, setting up shop near WWE events and cannibalizing WWE's merchandise sales by purveying unauthorized products. . . . WWE faces a real threat from such counterfeiters who, upon detection and notice of suit, disappear without a trace and hide or destroy evidence, only to reappear later at the next WWE event down the road.

<u>Id.</u>  The Fifth Circuit also criticized the lower court's conclusion that WWE had not proved "specific facts" about the identities of "person[s] against whom seizure would be ordered," and held that "the district court's granular focus on the 'identity' of unnamed Defendants misinterpreted the statutory requirement and its application here."  <u>Id.</u> at 1145.  As the Fifth Circuit found, "WWE cannot know in advance the specific identities of counterfeiters who will present themselves at any

given event, but it does know that any non-affiliated seller at or near an event is almost certainly a counterfeiter.  In this case, therefore, the 'person[s] against whom seizure would be ordered' are readily identifiable as any non-affiliated person purporting to sell WWE merchandise at or near a live WWE event." Id. The Fifth Circuit's ruling was consistent with the prior TROs and Seizure Orders WWE obtained from multiple federal district courts, including from this District, pursuant to which WWE has been able to seize Counterfeit Merchandise sold by unauthorized bootleggers at prior WrestleMania® events and other WWE live events.  See Ex. 2 ¶¶ 18-33; Ex. 3.

WWE has never authorized the manufacture, distribution, or sale of the Counterfeit Merchandise sold by Defendants.  See Verified Complaint ¶ 36. Unlike genuine WWE goods, which are of the highest quality and grade, the Counterfeit Merchandise is likely to be of inferior quality to the WWE Merchandise.  See id. ¶ 37; Ex. 2 ¶ 50.  Further, because the quality of materials used by Defendants is not and cannot be controlled by WWE, there is a potential safety risk to the public with regard to the materials used to manufacture the Counterfeit Merchandise (e.g., the Counterfeit Merchandise does not meet flammability standards). See Verified Complaint ¶ 37, 56; Ex. 2 ¶ 50.   In this regard, at the Preliminary Injunction hearing before the District Court for the Southern District of Florida in 2012, the district court when presented with the

9

Counterfeit Merchandise that was seized noted the very strong chemical odor emanating from shirts, remarking that the Court did not "even have to have it close to my nose" to notice the smell. <u>See</u> Ex. 2 ¶ 50. Thus, Defendants' sales of inferior quality Counterfeit Merchandise displaying the WWE Marks will injure WWE's reputation for the manufacture and sale of the highest quality souvenirs, merchandise, and memorabilia and could pose a risk to public safety. <u>See</u> <u>id.</u>

Based on its prior encounters with sellers of Counterfeit Merchandise at WWE live events, WWE asserts that notice to Defendants would result in the movement of or dispersal of the goods bearing counterfeit marks to third parties for eventual sale elsewhere. <u>See</u> <u>id.</u> ¶ 53. Accordingly, WWE asks this Court for relief in the form of an <u>ex</u> <u>parte</u> TRO against Defendants, an Order of Seizure of Defendants' goods bearing counterfeits of the WWE Marks, and an Order to Show Cause why a preliminary injunction should not issue. As recognized by Prof. McCarthy, the relief requested herein is the only effective way for WWE to protect its rights and the public from the sale of inferior merchandise which bears a false designation of origin and which is sold by Defendants who are accountable to no one, whether for payment of royalties, sales taxes, or for quality control.

## <u>ARGUMENT</u>

Under prevailing Third Circuit law, the standards for issuance of a temporary restraining order are the same as those governing the granting of

preliminary injunctive relief.  See Westchester Fire Ins. Co. v. Global Real Constr., LLC, No. 09-207, 2009 WL 137414, at *1 (D.N.J. Jan. 20, 2009) (quoting Kos Pharms., Inc. v. Andrx Corp., 369 F.3d 700, 708 (3d Cir. 2004)).

In order to obtain a temporary restraining order or preliminary injunction in a trademark infringement action, a plaintiff must show "(1) a likelihood of success on the merits; (2) that it will suffer irreparable harm if the injunction is denied; (3) that granting preliminary relief will not result in even greater harm to the non-moving party; and (4) that the public interest favors such release."  Id.  For the reasons described in detail below, WWE is entitled to relief under each of these four factors.

**A.    WWE IS ENTITLED TO A TRO AND SEIZURE ORDER AGAINST SALES OF GOODS BEARING COUNTERFEIT MARKS.**

**1.    There Is a Substantial Likelihood that WWE Will Prevail on the Merits of Its Claims.**

To prevail on a trademark infringement claim, a plaintiff must show that (1) its mark is valid, and (2) defendant's use of the mark is likely to cause consumer confusion.  See Kos Pharms., 369 F.3d at 708-09.[3]  WWE is likely to succeed on the merits of its claims against Defendants for the following three reasons.

**First**, the WWE Marks are valid.  WWE owns federal trademark and service mark applications and registrations for the numerous marks listed in Exhibit 1 to

---

[3]  The Lanham Act protects both registered (§ 32) and unregistered marks (§ 43). See Dastar Corp. v. Twentieth Century Fox Film Corp., 539 U.S. 23, 29 (2003).

the Verified Complaint. The federal trademark registrations are prima facie evidence of the validity of WWE's marks. 15 U.S.C. § 1115(a). With respect to the unregistered names and trademarks of its current wrestlers, WWE exclusively owns or controls all right, title and interest in those trademarks as well as other intellectual property rights, including their likenesses and rights of publicity, through its contracts with those wrestlers. <u>See</u> Verified Complaint ¶ 10.

*Second*, Defendants' use of counterfeit marks is likely to cause consumer confusion. The likelihood of confusion test focuses on whether a defendant's use of a plaintiff's trademark is likely to create confusion in the minds of potential purchasers as to the source, affiliation, or sponsorship of the parties' products. <u>See</u> MCCARTHY ON TRADEMARKS § 27:18. The greater the similarity between the marks the more likely confusion will occur. <u>See</u> <u>Kos Pharms.</u>, 369 F.3d 712-13.[4] In the case of counterfeit goods, this Court has recognized that a likelihood of confusion is manifest. <u>See</u> <u>Nike, Inc. v. Eastern Ports Custom Brokers, Inc.</u>, No. 2:11-cv-4390-CCC-MF, 2018 WL 3472628, at *4 (D.N.J. July 19, 2018) (finding a

---

[4] The Third Circuit has identified ten non-exclusive factors for determining likelihood of confusion. <u>See</u> <u>Sabinsa Corp. v. Creative Compounds, LLC</u>, 609 F.3d 175, 183 (3d Cir. 2010). Because Defendants are expected to use exact copies of WWE marks on the exact same products, WWE has not discussed these factors in detail. The Verified Complaint and declarations submitted in support thereof, however, establish that the WWE Marks are distinctive, and that Defendants intend to and, unless abated, will deliberately confuse the consuming public into believing they are purchasing legitimate WWE Merchandise of the highest quality. Accordingly, likelihood of confusion is manifest.

303147235 v1

likelihood of confusion because "counterfeit goods, by definition, are intended to create consumer confusion"); <u>Cartier Int'l A.G. v. Daniel Markus, Inc.,</u> No. 10-1459-DRD, 2013 WL 5567150, at *8 (D.N.J. Oct. 8, 2013) (noting likelihood of confusion "clearly" established where marks of counterfeit goods were identical to registered marks). Applying analogous likelihood of confusion tests, courts across the country that have granted WWE <u>ex parte</u> TROs and Seizure Orders have consistently found that the sale at or in connection with WWE live events of bootleg merchandise using marks that are identical to the WWE Marks create a likelihood of confusion.   <u>See</u> Ex. 2 ¶¶ 18-33; Ex. 3.

Here, as in WWE's prior cases, Defendants have manufactured bootleg merchandise for the purpose of selling it at WWE live events and are intentionally (1) using marks that are **<u>identical</u>** to the WWE Marks; (2) using them on the same types of merchandise that genuine WWE Marks are affixed to, such as T-shirts; and (3) targeting the fans of the WWE by selling the Counterfeit Merchandise at or near WWE's 2019-2020 Live Events.  <u>See</u> Verified Complaint ¶¶ 20-57.  The sale of unauthorized bootlegged merchandise bearing the names, trademarks, logos, or likenesses of well-known events, performers or groups unquestionably violates the Lanham Act.  <u>See</u> <u>World Wrestling Ent., Inc.,</u> 770 F.3d at 1144-45 (finding any non-affiliated person purporting to sell WWE merchandise at or near a live WWE event is a counterfeiter); <u>SKS Merch, LLC v. Barry,</u> 233 F. Supp. 2d 841, 845-47

(E.D. Ky. 2002) (holding that selling T-shirts and other merchandise using a performer's likeness, image, photograph, logos and/or tour information without authorization constitutes infringement); see also Microsoft Corp. v. Silberstein, No. 06-3206 (HAA), 2009 WL 10690512, at *7 (D.N.J. Jan. 29, 2009) (stating that defendant distributing products bearing the trademark owner's registered marks is "a classic case of trademark infringement").

### 2.  WWE Will Suffer Irreparable Injury.

WWE will likely suffer irreparable injury if an injunction is not granted. See Ferring Pharm. Inc., v. Watson Pharm., Inc., 765 F.3d 205, 217 (3d Cir. 2014). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill."  See Mister Softee, Inc. v. Amonollahi, No. 2:14-cv-01687 (KM) (MCA), 2014 WL 3110000, at *14 (D.N.J. July 1, 2014) (quoting Kos Pharm., 369 F.3d at 726) (applicant made sufficient showing of irreparable injury because defendant's continued infringing activity threatened applicant's reputation and goodwill);  7-Eleven, Inc. v. Upadhyaya, No. 12-5541, 2013 WL 765661, at *14 (E.D. Pa. Mar. 1, 2013) (applicant made sufficient showing of irreparable injury from loss of control); World Wrestling Ent., Inc., 770 F.3d at 1144-45.  In this case, WWE certainly will lose control over its reputation and goodwill if Defendants are not prohibited from selling goods bearing counterfeit WWE Marks. WWE has no connection or access to Defendants' goods, and thus cannot monitor

14

the quality, appearance, safety, or other aspects of the goods which tend to impact WWE's reputation.

The fact that Defendants' Counterfeit Merchandise is expected to be inferior in quality to genuine WWE merchandise exacerbates the irreparable injury in these circumstances.  See Am. Greetings Corp. v. Dan-Dee Imports, 619 F. Supp. 1204, 1227 (D.N.J. 1985) (finding irreparable harm resulting from "damage to plaintiff's reputation in the event that defendants' products are of inferior quality to plaintiffs"); Camel Hair & Cashmere Inst. of Am. v. Associated Dry Goods Corp., 799 F.2d 6, 15 (1st Cir. 1986) ("[I]f an infringer's product is of poor quality, or simply not worth the price, a lasting but not readily measurable injury may be inflicted on the plaintiff's reputation . . . ." (quoting Omega Importing Corp. v. Petri-Kine Camera Co., 451 F.2d 1190, 1195 (2d Cir. 1971)).

Indeed, this Court recently held that a trademark owner "suffered an irreparable injury" from the importation of counterfeit goods.  See Nike, Inc., 2018 WL 3472628, at *14-15 (granting permanent injunction).

**3.    The Threatened Injury to WWE Outweighs Any Potential Harm to Defendants.**

As succinctly stated by the District Court for the Eastern District of Kentucky, "bootleg vendors have no conceivable right to continue violating the [Lanham Act]."  SKS Merch, 233 F. Supp. 2d at 848.  There is no legitimate argument that Defendants would be harmed by an order that prevents them from

15

violating the Lanham Act.  Defendants seek to reap what they have not sown, namely, the fruits of the goodwill and fame associated with the WWE Marks. Defendants are not entitled to a "free ride" at WWE's expense.  <u>Brockum Co. v. Blaylock</u>, 729 F. Supp. 438, 444 (E.D. Pa. 1990) (bootleggers must be prohibited from obtaining a "free ride;" counterfeit merchandise is designed to take advantage of the efforts and expenditures of the trademark owner and are unlawful attempts by defendant to "reap where it has not sown").

Any conceivable harm to Defendants would be purely economic, and under the proposed order, WWE will post security for payment of any costs or damages that may be incurred or suffered by a party found to be wrongfully restrained.  As such, the irreparable harm to WWE discussed above is sufficient to outweigh any harm that Defendants could incur.

### 4.  <u>Injunctive Relief Will Serve the Public Interest.</u>

Defendants are infringing the WWE Marks, and an Order restraining Defendants from such activity will clearly serve the public interest for at least the following four reasons.

*First*, "[t]he public interest is **<u>always served</u>** by requiring compliance with Congressional statutes such as the Lanham Act and by enjoining the use of infringing marks."  <u>Quantum Fitness Corp. v. Quantum Lifestyle Ctrs., L.L.C.</u>, 83 F. Supp. 2d 810, 832 (S.D. Tex. 1999) (emphasis added).

*Second,* the public interest is served by preventing consumer confusion about the correct source of the goods and services. See Kos Pharms., 369 F.3d at 730 ("In light of our holding that there is a likelihood of confusion created by the use of confusingly similar marks, it follows that if such use continues, the public interest would be damaged.  Conversely, a prohibition upon defendant's use of its mark would eliminate that confusion.") (internal quotation marks omitted).

*Third*, the sale of licensed merchandise is expected to generate a substantial amount of revenue for not only WWE, but also the local venues, which will receive a percentage of WWE's legitimate sales, and the federal, state, and local governments who collect taxes upon the total amount of sales of legitimate merchandise.   For example, a study conducted by the Enigma Research Corporation estimated that last year, WrestleMania® 34 generated $175 million in economic impact for the New Orleans area and approximately $23.7 million in local, state and county taxes.  See Ex. 4.  Without a TRO and Seizure Order, counterfeiters will be allowed to steal revenue not only from WWE, but also from local merchants and the governments of the United States and New Jersey.

*Finally*, the public interest is served by preventing goods that may be of inferior quality and could potentially pose a serious safety risk from being made available to the general public, and especially to children to whom most of the counterfeit T-shirts are targeted (e.g., the Counterfeit Merchandise does not meet

17

flammability standards).  <u>See</u> Verified Complaint ¶ 56.

### 5.    <u>WWE Is Entitled to Ex Parte Relief in these Circumstances.</u>

Federal courts have authority to grant a TRO without notice to the adverse party if irreparable injury will result to the plaintiff before the adverse party can be heard.  <u>See</u> Fed. R. Civ. P. 65(b).  Likewise, 15 U.S.C. § 1116(d) expressly provides that that an <u>ex parte</u> TRO and Seizure Order should issue upon a showing of irreparable injury.  Because notice to Defendants would likely result in Defendants disposing or moving the Counterfeit Merchandise, an <u>ex parte</u> TRO and seizure order are appropriate here.  <u>See</u> 15 U.S.C. § 1116(d); <u>In re Vuitton et Fils S.A.</u>, 606 F.2d 1, 5 (2d Cir. 1979) (issuing an <u>ex parte</u> temporary restraining order after finding that if notice were given to the alleged infringer, it was highly probable that the infringer would dispose of the infringing goods in the few hours before the hearing).[5]

Moreover, WWE has, on many occasions, attempted to identify Defendants but it has been thwarted by Defendants themselves through numerous evasive tactics, including, but not limited to, failing to carry identification, fleeing when approached by WWE officials and giving false information.  <u>See</u> Verified

---

[5]  WWE also has complied with the numerous requirements under the statute, including: (1) providing notice to the U.S. Attorney's office in advance of the application for seizure order (<u>see</u> Ex. 5 (without exhibits)); (2) filing a declaration and a Verified Complaint establishing facts sufficient to support the findings of fact and conclusions of law; and (3) agreeing to post security adequate to compensate any person from whom goods are wrongfully seized.

18

Complaint ¶ 42.  Accordingly, consistent with the Fifth Circuit's opinion and the numerous federal court orders that WWE has obtained across the United States, including in this Court in 2013 for WrestleMania® 29, WWE respectfully requests the Court grant WWE an <u>ex</u> <u>parte</u> TRO and Seizure Order.  <u>See</u> <u>e.g.</u>, <u>World Wrestling Ent., Inc.</u>, 770 F.3d at 1145 ("[T]he orders sought here should issue."); <u>see</u> <u>also</u> <u>SKS Merch</u>, 233 F. Supp. 2d at 845-47; Exs. 2-3 attached hereto.[6]

**B.    <u>A NATIONWIDE INJUNCTION IS APPROPRIATE WHERE DEFENDANTS ENGAGED IN THE COUNTERFEITING ACTIVITY OVER THE COURSE OF A NATIONWIDE SERIES OF LIVE EVENTS.</u>**

Section 1116 specifically authorizes the issuance of a nationwide preliminary injunction and order of seizure to prevent counterfeiting.  It provides,

---

[6] Because of the <u>ex</u> <u>parte</u> nature of WWE's requested relief, WWE points the Court to three non-binding district court decisions in which <u>ex</u> <u>parte</u> relief against unnamed bootleggers was denied.  <u>See</u> <u>Plant v. Does</u>, 19 F. Supp. 2d 1316, 1319 (S.D. Fla. 1998) (holding that the court did not have jurisdiction over unnamed defendants where plaintiff did not provide any reason for why it could not obtain the identities of the unnamed defendants); <u>Araca Merchandise L.P. v. Does</u>, 182 F.Supp.3d 1290, 1295 (S.D. Fla. 2016) (holding that the case was not ripe for judicial disposition and that it did not have jurisdiction over the unknown defendants); <u>Rock Tours, Ltd. v. Does</u>, 507 F. Supp. 63, 66 (N.D. Ala. 1981) (citing at least *sixteen* other federal district court cases that granted <u>ex</u> <u>parte</u> relief against unnamed bootlegging defendants but holding that the court did not have personal jurisdiction over unnamed defendants).  The rationale of the courts to deny <u>ex</u> <u>parte</u> relief in those cases is not applicable here for the reasons clearly articulated by the Court of Appeals for the Fifth Circuit in <u>WWE</u> and in <u>SKS Merch.</u>  <u>See</u> <u>World Wrestling Ent., Inc.</u>, 770 F.3d at 1143-45; <u>SKS Merch.</u>, 233 F. Supp. 2d at 848-51 (rejecting the court's analysis in <u>Plant</u> and granting <u>ex</u> <u>parte</u> TRO and seizure order). Furthermore, the plaintiff in <u>Araca</u> obtained a TRO and nationwide preliminary injunction from a court less than a month later. See <u>Araca v. John Does 1-100</u>, Case No. 4:16-cv-01194 (S.D. Tex. 2016).

303147235 v1

in pertinent part, that an injunction can be served and enforced "anywhere in the United States where [Defendants] may be found."  15 U.S.C. § 1116(a).  Such nationwide relief has been particularly applied in the live sports and entertainment context for companies like WWE who promote a series of live events throughout the country, because counterfeiters, like Defendants here, follow these events selling Counterfeit Merchandise at every city and venue where a Live Event takes place.  See generally Exs. 1-3; Ex. 6.

Recognizing this modus operandi, courts have granted nationwide injunctive relief and seizure orders.  See, e.g., Exs. 1-3; Ex. 6; SKS Merch, 233 F. Supp. 2d at 849-53; Gore v. Various John Does, No. 98-CIV-7576 (DLC), 1998 WL 778374, at *1-2 (S.D.N.Y. Nov. 6, 1998). As noted at the outset, in 2013, this Court granted WWE's identical request for relief.  See Ex. 1; Verified Complaint ¶ 26.

Courts granting such relief correctly recognize that nationwide injunction and seizure order is the only effective way to stop counterfeiting activity undertaken by bootleggers who conspire to travel along tour routes and criss-cross the United States.  See SKS Merch, 233 F. Supp. 2d at 849-53.  Under the reasoning of those courts, WWE is entitled to nationwide relief here for the following reasons.

*First*, based on WWE's prior experiences, the unnamed Defendants and their Counterfeit Merchandise will appear not only at the WrestleMania® 35

20

Weekend Events but also at WWE's other 2019-2020 Live Events set forth in Exhibit 3 to the Verified Complaint.  Indeed, WWE has encountered first hand this pattern of illegal activity, even having served and seized counterfeit merchandise from the same individual, years apart and in different cities.  See Ex. 2 ¶ 38.  In the case WWE filed in the Southern District of Florida for WrestleMania® 28, two of the named Defendants, Thomas Keane (New York resident) and "Butch" Thomas Ingram, also were served at WrestleMania® 24 in Orlando, Florida in April 2008, pursuant to an ex parte TRO and seizure order from the District Court for the Middle District of Florida. Id. Neither individual appeared in court in Orlando or Miami. Id.  Furthermore, two Defendants in the 2014 case before the District Court for the Eastern District of Louisiana had been previously served in a different state entirely — at WrestleMania® 28 in Miami, Florida in 2012 pursuant to an ex parte TRO and seizure order from the District Court for the Southern District of Florida. Id.  Neither individual appeared in court in Miami or New Orleans.  Id.

Additionally, based upon WWE's prior experiences, WWE expects and believes that Defendants will print Counterfeit Merchandise with multiple dates from the 2019-2020 Live Events schedule so that the Counterfeit Merchandise can be sold from city-to-city.  See generally Ex. 2.   WWE should not be required to suffer irreparable harm in every city before obtaining relief from what is clearly concerted infringing activity by the unnamed Defendants.

*Second*, as the court in <u>SKS Merch</u> specifically held, 15 U.S.C. § 1116 explicitly provides federal courts the power to grant nationwide injunctions against violations of the Lanham Act.  <u>See</u> <u>SKS Merch</u>, 233 F. Supp. 2d at 849-50.  The court's analysis in <u>SKS Merch</u> is not only correct but also logical, as injunctive relief that did not apply nationwide would be of little use if a defendant even though enjoined by one court could sell counterfeit goods in another district without consequence.

*Third*, just as in <u>SKS Merch</u>, the injunctive relief requested applies to Defendants who have been served (i.e., those bootleggers selling Counterfeit Merchandise) and those acting in concert with served Defendants, including those selling identical or substantially similar Counterfeit Merchandise.  The U.S. Supreme Court has recognized that Rule 65(d) of the Federal Rules of Civil Procedure was intended to embody "the common-law doctrine that a decree of injunction not only bind the parties defendant but also those identified with them in interest, in 'privity' with them, represented by them or subject to their control." <u>Regal Knitwear Co. v. NLRB</u>, 324 U.S. 9, 14 (1945).  Courts have realized that "the objectives of an injunction may be thwarted by the conduct of parties not specifically named in its text."  <u>Rockwell Graphic Sys., Inc. v. DEV Indus.</u>, 91 F.3d 914, 920 (7th Cir. 1996).  Rule 65(d) is meant to protect injunctions from being so undermined.  <u>See</u> <u>id.</u>  The Court, therefore, may enjoin all participants in a

counterfeiting operation in which any Defendants are members. See SKS Merch, 233 F. Supp. 2d at 848-53 (enjoining named and unnamed defendants from selling counterfeit merchandise and ordering that the "Preliminary Injunction may be enforced by the seizure of any such merchandise").

The counterfeiting activities of Defendants are part of a concerted operation that will follow WWE's 2019-2020 Live Events and sell similar merchandise throughout the country.  See generally Ex. 2.  The Counterfeit Merchandise is mass produced and will be sold nationwide throughout WWE's 2019-2020 Live Events. Id.  Indeed, because WWE's 2019-2020 Live Events are planned out in advance and advertised on WWE's website, many of the Defendants print the dates of WWE's 2019-2020 Live Events on the back of the counterfeit T-shirts which they sell.  Id. ¶ 36.  Persons found selling a shirt that has various dates for WWE's 2019-2020 Live Events are "aiding and abetting, or acting in active concert with" served Defendants who have sold similar shirts at other 2019-2020 Live Events.

If a nationwide injunction and seizure order is not granted, WWE would be compelled to go court throughout WWE's 2019-2020 Live Events to attempt to enforce its rights, which would impose a great burden on both WWE and the judicial resources of the courts.  Conversely, the requested injunctive relief includes adequate protections to ensure that no lawful vendor is harmed by the relief sought and all counterfeiters will have an ability to be heard with request to

any merchandise that is seized.  For example, all persons served with the order will be provided with a receipt for the merchandise and will be informed of their right to a prompt hearing before the Court.  Although no bootlegger has ever appeared in any case where WWE has been granted a nationwide injunction and seizure order, WWE would waive any objections to venue and transfer the action should any Defendant challenge any enforcement of the injunction.  Indeed, WWE would welcome such appearances as it would permit WWE to identify the bootleggers, take discovery from them, discover their manufacturing and printing sources and pursue them for money damages.  In addition, WWE's posted security would be continued and act as a guaranteed source of recovery for any wrongdoing that they may assert and WWE will hold any seized articles as directed by the Court.

## CONCLUSION

WWE has established federally protected rights under the Lanham Act. Defendants' activities unquestionably violate those rights, and WWE is thus entitled to the protection of this Court.  Experience has shown that Defendants are part of an illegal counterfeiting chain and that those Defendants served within this district, as well as their cohorts, will remain a major link in that chain as they follow WWE's 2019-2020 Live Events across the United States.  Accordingly, WWE respectfully requests that the Court grant the relief requested herein.

303147235 v1

# BOND

For the reasons stated herein, WWE requests that the bond amount not exceed $10,000.

Respectfully Submitted,

/s/ Loly G. Tor
Loly G. Tor
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, NJ 07102
Telephone: (973) 848-4026
Fax: (973) 848-4001
E-mail: loly.tor@klgates.com

Jerry S. McDevitt (*pro hac vice* motion to be filed)
E-mail: jerry.mcdevitt@klgates.com
Curtis B. Krasik (*pro hac vice* motion to be filed)
E-mail: curtis.krasik@klgates.com
Christopher M. Verdini (*pro hac vice* motion to be filed)
E-mail: christopher.verdini@klgates.com
K&L Gates LLP
K&L Gates Center
210 Sixth Ave.
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501
*Attorneys for World Wrestling Entertainment, Inc.*

Dated: March 28, 2019