Loly G. Tor
**K&L GATES LLP**
One Newark Center, 10th Fl.
Newark, NJ 07102
P: (973) 848-4000
F: (973) 848-4001
loly.tor@klgates.com
Attorneys for Plaintiff World
Wrestling Entertainment, Inc.

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| WORLD WRESTLING ENTERTAINMENT, INC., <br><br> Plaintiff, <br><br> vs. <br><br> ERIC D. MOORE, ANTHONY SIMMONS, LOUIS E. MOORE, LILLAR R. HAYES, ANDRE OQUINN, PARIS E. LEACRAFT, DEVON BROWN, MITCHELL J. SLATER, TYREAK RUSH, JOHN AND JANE DOES 1-100, and XYZ CORPORATIONS 1-100, <br><br> Defendants. | Civ. Act. No.: 19-cv-9039-SDW-LDW <br><br> **AMENDED VERIFIED COMPLAINT FOR INJUNCTIVE RELIEF AND DEMAND FOR JURY TRIAL** |

Plaintiff World Wrestling Entertainment, Inc. ("WWE"), by and through its

undersigned attorneys, hereby files this Amended Complaint to provide the

identities of those individuals who WWE was able to serve pursuant to the Court's

March 29, 2019 Temporary Restraining Order and Order for Seizure of Counterfeit

Marked Goods (the "March 29, 2019 Order") and from whom counterfeit WWE

merchandise was seized during WWE's WrestleMania® 35 event at MetLife Stadium in East Rutherford, New Jersey.  WWE also provides the Court with additional information on the counterfeiting that it experienced in connection with WrestleMania® 35 events that occurred in New York.  In support of this Amended Complaint, WWE alleges as follows:

## NATURE OF THE CASE

1.      This is an action for trademark infringement, counterfeiting and dilution under the Lanham Act, 15 U.S.C. § 1051, et seq., including the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d), and related state law claims for trademark infringement, dilution and unfair competition occasioned by Defendants' unlawful manufacture, distribution and/or sale of counterfeit merchandise bearing unauthorized copies of WWE's registered and unregistered trademarks and service marks.  WWE brings this action to (i) protect its reputation for selling merchandise of the highest quality and grade; (ii) prevent deception of the consuming public by Defendants; (iii) retain control over the substantial goodwill associated with the numerous registered and unregistered trademarks and service marks being unlawfully exploited by Defendants; and (iv) avoid irretrievably lost sales.

2.      To achieve these goals, WWE, through an *Ex Parte* Motion for Temporary Restraining Order; Order for Seizure of Counterfeit Marked Goods;

303222269 v1

and Order to Show Cause Why a Preliminary Injunction Should Not Issue, sought and obtained an order from this Court authorizing the seizure of WWE counterfeit merchandise.

3.      WWE also seeks a preliminary and permanent injunction to prevent Defendants from unlawfully infringing WWE's intellectual property rights through Defendants' manufacture, distribution and/or sale of counterfeit merchandise bearing WWE's trademarks and the names or likenesses of its wrestlers during WWE's nationwide tour of live wrestling entertainment events which began with WWE's WrestleMania® 35 event and ends March 30, 2020 (WWE's final live event before WrestleMania® 36) ("WWE's 2019-2020 Live Events").

## PARTIES

4.      Plaintiff WWE is a Delaware corporation having its principal place of business at 1241 East Main Street, Stamford, Connecticut 06902.

5.      Defendant Eric D. Moore is an individual residing at 1600 Sedgwick, 26E, Bronx, New York 10453. Pursuant to the Court's March 29, 2019 Order, WWE served Mr. Moore on April 7, 2019 with a copy of the Verified Complaint, Summons and the March 29, 2019 Order and WWE seized 58 counterfeit t-shirts bearing WWE's trademarks.  Upon information and belief, Mr. Moore has acted and will act in concert or active participation with the other named and unnamed

3

Defendants (and their officers, agents, servants and employees) in the action in connection with a counterfeiting ring and the wrongful act alleged below.

6.     Defendant Anthony Simmons, who did not provide an address, was served on April 7, 2019 by WWE pursuant to the Court's March 29, 2019 Order with a copy of the Verified Complaint, Summons and the March 29, 2019 Order. WWE seized 56 counterfeit t-shirts bearing WWE's trademarks from Mr. Simmons.  Upon information and belief, Mr. Simmons has acted and will act in concert or active participation with the other named and unnamed Defendants (and their officers, agents, servants and employees) in the action in connection with a counterfeiting ring and the wrongful act alleged below.

7.     Defendant Louis E. Moore is an individual residing at 60 E. 135th Street, Apt. 3B, New York, NY 10037. Pursuant to the Court's March 29, 2019 Order, WWE served Mr. Moore on April 7, 2019 with a copy of the Verified Complaint, Summons and the March 29, 2019 Order and WWE seized 60 counterfeit t-shirts bearing WWE's trademarks.  Upon information and belief, Mr. Moore has acted and will act in concert or active participation with the other named and unnamed Defendants (and their officers, agents, servants and employees) in the action in connection with a counterfeiting ring and the wrongful act alleged below.

8.      Defendant Lillar R. Hayes, who did not provide an address, was served on April 7, 2019 by WWE pursuant to the Court's March 29, 2019 Order with a copy of the Verified Complaint, Summons and the March 29, 2019 Order. WWE seized 33 counterfeit t-shirts bearing WWE's trademarks from Ms. Hayes. Upon information and belief, Ms. Hayes has acted and will act in concert or active participation with the other named and unnamed Defendants (and their officers, agents, servants and employees) in the action in connection with a counterfeiting ring and the wrongful act alleged below.

9.      Defendant Andres Oquinn is an individual residing at 1535 Undercliff Ave., Apt. 515, Bronx, New York 10453. Pursuant to the Court's March 29, 2019 Order, WWE served Mr. Oquinn on April 7, 2019 with a copy of the Verified Complaint, Summons and the March 29, 2019 Order and WWE seized 53 counterfeit t-shirts bearing WWE's trademarks.  Upon information and belief, Mr. Oquinn has acted and will act in concert or active participation with the other named and unnamed Defendants (and their officers, agents, servants and employees) in the action in connection with a counterfeiting ring and the wrongful act alleged below.

10.      Defendant Paris E. Leacraft is an individual residing at 1333 Lotus St., Columbia, South Carolina 29205. Pursuant to the Court's March 29, 2019 Order, WWE served Mr. Leacraft on April 7, 2019 with a copy of the Verified

5

Complaint, Summons and the March 29, 2019 Order and WWE seized 49 counterfeit t-shirts bearing WWE's trademarks.  Upon information and belief, Mr. Leacraft has acted and will act in concert or active participation with the other named and unnamed Defendants (and their officers, agents, servants and employees) in the action in connection with a counterfeiting ring and the wrongful act alleged below.

11.    Defendant Devon Brown is an individual residing at 218 E. 161st Street, Bronx, New York 10456. Pursuant to the Court's March 29, 2019 Order, WWE served Mr. Brown on April 8, 2019 with a copy of the Verified Complaint, Summons and the March 29, 2019 Order and WWE seized 98 counterfeit t-shirts bearing WWE's trademarks.  Upon information and belief, Mr. Brown has acted and will act in concert or active participation with the other named and unnamed Defendants (and their officers, agents, servants and employees) in the action in connection with a counterfeiting ring and the wrongful act alleged below.

12.    Defendant Mitchell J. Slater is an individual residing at 2140 Madison Ave., 4B, New York, New York 10037. Pursuant to the Court's March 29, 2019 Order, WWE served Mr. Slater on April 8, 2019 with a copy of the Verified Complaint, Summons and the March 29, 2019 Order and WWE seized 31 counterfeit t-shirts bearing WWE's trademarks.  Upon information and belief, Mr. Slater has acted and will act in concert or active participation with the other named

and unnamed Defendants (and their officers, agents, servants and employees) in the action in connection with a counterfeiting ring and the wrongful act alleged below.

13.   Defendant Tyreak Rush, who did not provide an address, was served on April 8, 2019 by WWE pursuant to the Court's March 29, 2019 Order with a copy of the Verified Complaint, Summons and the March 29, 2019 Order.  WWE seized 42 counterfeit t-shirts bearing WWE's trademarks from Mr. Rush.  Upon information and belief, Mr. Rush has acted and will act in concert or active participation with the other named and unnamed Defendants (and their officers, agents, servants and employees) in the action in connection with a counterfeiting ring and the wrongful act alleged below.

14.   Defendants John and Jane Does and XYZ Corporations, whose precise identities are not yet known to WWE, are individuals and entities who, upon information and belief, have done and will be doing business in the District of New Jersey, and/or are now conspiring and otherwise traveling to the District of New Jersey and other WWE 2019-2020 Live Events listed in Exhibit 3 attached hereto.   In addition, Defendants John and Jane Does include at least two individuals whom, when WWE served them with a copy of the Verified Complaint, Summons and March 29, 2019 Order and seized their counterfeit merchandise, refused to provide identification or any other information that would

7

allow WWE to specifically identify them and at least seven individuals whom were selling counterfeit merchandise at the WWE's WrestleMania® 35 events that occurred in New York.

15.    Upon information and belief, Defendants are acting in concert and active participation with each other in connection with the wrongful acts alleged below.

## JURISDICTION AND VENUE

16.    This Court has personal jurisdiction over the Defendants because they reside in and/or have transacted or will be transacting business in this State, and have caused harm or tortious injury in this State by acts within this State.  Upon information and belief, all Defendants are individuals and entities who were present and will be present in the District of New Jersey in connection with the claims asserted below and/or who, at all times relevant hereto, have done and will be doing business in the District of New Jersey.

17.    This Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. § 1338(a) and (b).  This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367(a), with respect to the state law claims asserted herein.

303222269 v1

18.    This Court is an appropriate venue for this action under 28 U.S.C. § 1391(a)(2), because a substantial part of the events giving rise to WWE's request for relief occurred and will occur in this district.

## FACTUAL BACKGROUND

### A.    WWE's Business And Marks

19.    Since at least as early as February 1983, WWE, first doing business as the "World Wrestling Federation" and now doing business as "World Wrestling Entertainment," has provided to the public live and televised wrestling-based sports entertainment events and services (the "WWE Wrestling Services").   In connection therewith, WWE has used, advertised, publicized and presented the WWE Wrestling Services, and related souvenirs, merchandise and other products ("WWE Merchandise") under its WORLD WRESTLING ENTERTAINMENT® mark and certain other service marks and trademarks (collectively, the "WWE Marks").   A listing of those WWE Marks, both currently pending or registered with the United States Patent and Trademark Office and unregistered but exclusively owned or controlled by WWE, is set forth in Exhibits 1 and 2 hereto, respectively.   Among the marks most important to this action are:

| Mark | U.S. Trademark Registration Nos. |
|---|---|
| WORLD WRESTLING ENTERTAINMENT | 2,818,358; 2,772,677; 2,757,599; 2,754,499; 2,870,426; 2,902,203; 2,917,910; 3,585,170; 3,585,171 |

9

| WWE | 2,772,683; 3,056,074; 3,541,936; 4,451,697; 3,538,710; 3,489,357; 3,412,176; 3,412,177; 3,541,956; 3,621,017 |
|---|---|
| WWE Logos | 4,735,547; 4,731,795; 4,735,546; 4,625,255; 4,727,923; 4,675,657; 4,538,209; 4,689,839; 4,689,835; 4,538,210; 4,614,144; 4,645,471; 4,552,144; 2,757,596; 2,754,495; 2,846,450; 2,799,228; 2,751,436; 2,757,597; 2,765,751; 2,751,437; 4,756,090; 3,412,169; 3,412,170; 3,691,588; 4,220,594; 5,291,266 |
| WRESTLEMANIA | 1,432,884; 1,863,534; 2,625,125; 2,881,508; 3,351,858; 3,351,859; 3,727,338; 3,727,339; 4,285,112; 4,780,778; 4,923,842; 5,094,698 |

The WWE Marks are well known to the public and have come to identify WWE to the public as the genuine source and sponsor of WWE Wrestling Services and WWE Merchandise. WWE exclusively owns or controls all right, title and interest in the names, likenesses and rights of publicity for its current wrestlers.

20.     WWE's 2019-2020 Live Events are a multi-city presentation of live wrestling entertainment events throughout the United States and in many other cities throughout the world.  The itinerary of WWE's 2019-2020 Live Events is attached hereto as Exhibit 3.  Most major U.S. cities will have a WWE live event appear in their city at least once or twice a year.  WWE's 2019-2020 Live Events include all of the following types of programs:  (1) live, pay-per-view events; (2) live, nationally-televised shows; and (3) live, non-televised events known as

10

"house shows." In addition to generating revenues through ticket sales and promoting its pay-per-view events, WWE sells a significant portion of WWE Merchandise at its Live Events.

21. WWE presents WORLD WRESTLING ENTERTAINMENT® pay-per-view events throughout the calendar year. WWE's annual marquee pay-per-view event is called "WrestleMania®" which sells for approximately $60 per view through WWE's cable and satellite providers and is offered to subscribers of the WWE Network. WrestleMania® is considered one of the "Big Four" original annual WWE pay-per-view events, along with SummerSlam®, Royal Rumble® and Survivor Series®.

22. WWE's pay-per-view events are the biggest wrestling events of the year for WWE and offer an occasion for, inter alia, determining and crowning WWE's various champions and/or elucidating the various story lines developed by WWE throughout the year. These live pay-per-view events are extensively promoted and widely attended and viewed.

23. For example, WrestleMania® 32 occurred at AT&T Stadium in Arlington, Texas drew a crowd of 101,763 from all 50 states and 35 countries, and was viewed by 1.82 million subscribers through the WWE Network. Moreover, WrestleMania® 32 was mentioned 2.5 million times on Twitter during the day of the broadcast. WrestleMania® 33 at Camping World Stadium in Orlando, Florida

drew an attendance of 75,245 and was the most-watched WrestleMania® history, reaching a record 1.95 million global households on the WWE Network alone. WrestleMania® 34 at the Mercedes-Benz Superdome in New Orleans, Louisiana drew a sold-out crowd of 78,133 spectators from all 50 states as well as 67 foreign countries.

24.    WWE's WrestleMania® also has drawn record merchandise sales for the venues.   For example, WrestleMania® 32 grossed $17.3 million, making it the highest grossing live event in WWE history.  WrestleMania® 32 also generated a record-breaking $4.55 million in WrestleMania® merchandise revenue, an increase of 37 percent, or $1.2 million, from WrestleMania® 31. WrestleMania® 33 generated $14.5 million in revenue, breaking every Camping World Stadium record. WrestleMania® 34 grossed $14.1 million, making it the Mercedes-Benz Superdome's highest grossing entertainment event.

25.    In addition to its pay-per-view events, WWE currently presents two weekly WWE programs called "RAW®" and "Smackdown®" that feature wrestling entertainment programming every Monday and Tuesday night nationwide on the USA Network cable television channel.

26.    In or around February 2014, WWE launched the WWE Network, a 24/7 direct-to-consumer online video-streaming network with scheduled programming and a massive video-on-demand library.  The WWE Network is

available in over 180 countries and territories and has over 1.5 million paid subscribers.  The WWE Network carries all of WWE's pay-per-view events as well as original programming.  WWE also provides subscribers to the WWE Network with "on demand" access to a massive and continuously growing video library of historical pay-per-view events and television programs from WWE and its predecessors as well as footage that WWE has acquired from third party wrestling promotions.  Each year, more than 7,000 hours of WWE programming can be seen in 650 million homes in more than 180 countries and territories and 35 languages.

27.   WWE also syndicates its video content on Hulu and YouTube including full length episodes and clips of "RAW®," "Smackdown®" and a variety of classic content and original short-form webisodes.

28.   At its Live Events, in retail stores nationwide and via on-line, WWE sells a large variety of WWE Merchandise featuring the WWE Marks.  The WWE Merchandise typically displays prominently the name and logo of the company, the WWE Marks, its events, its programs, and/or the wrestlers and other personalities involved with the events and programs.  Examples of WWE Merchandise  include without limitation, T-shirts, jerseys, sweatshirts, caps, hats, belts, wrestling masks, sunglasses, key rings, action figures, posters, and DVDs.

**B.**     **Counterfeiting At Previous Live Events**

29.   For many years, WWE has sold WWE Merchandise at and in connection with its live events.  WWE's venue merchandise business consists of the design, sourcing, marketing and distribution of numerous WWE-branded products, such as t-shirts, caps and other novelty items, all of which feature WWE's trademarks, Superstars, Divas and/or logos, including WORLD WRESTLING ENTERTAINMENT®, WWE®, the WWE® logo, and/or one or a number of other WWE Marks included in Exhibits 1 and 2 hereto.  In 2018, venue merchandise net revenues were approximately $22 million.

30.   WWE Merchandise is of the highest quality and grade.  These genuine goods are currently being sold only at authorized locations throughout the United States including, but not limited to, WWE live event venues and retail stores in the District of New Jersey, as well as authorized online retail stores such as WWE's e-commerce website at www.shop.wwe.com.

31.   Based upon information and belief, WWE's past experiences and its investigation into this matter, including enforcing this Court's March 29, 2019 Order, WWE asserts that Defendants, alone and in conjunction with other, similarly situated individuals and entities, specifically numerous peddlers and manufacturing and distribution entities, will be attempting to sell or distribute counterfeit goods at or near WWE's 2019-2020 Live Events that are of inferior

14

quality to those goods WWE sells and licenses for sale.  These goods, which are marked with imitations or counterfeits of the WWE Marks, include, <u>inter alia</u>, T-shirts, sweatshirts, caps, wrestling masks, DVDs, posters, and other souvenirs, merchandise and memorabilia ("Counterfeit Merchandise").  In addition, the merchandise sold by Defendants not only is counterfeit but the merchandise also threatens public safety.  Based on past experience, there are concerns about the quality of the counterfeit goods, such as the flammability level of the ink used to print the t-shirts, and the safety of the design of other goods, including wrestling face masks.

32.   For example, at WWE's WrestleMania® 27 events, held on March 30 through April 4, 2011, in Atlanta, Georgia, WWE encountered an untold number of individuals, who came from all over the United States, distributing and selling Counterfeit Merchandise.  With the aid of an <u>ex parte</u> TRO and seizure order granted by the United States District Court for the Northern District of Georgia, WWE was able to gain some measure of control over such counterfeiting by seizing more than 3,000 counterfeit t-shirts during the WrestleMania® 27 weekend events.  The t-shirts were being sold for at least $10 per shirt.

33.   At the WrestleMania® 28 events in Miami, Florida in 2012, WWE again encountered numerous counterfeiters from various states selling bootleg merchandise.  In the course of enforcing an <u>ex parte</u> TRO and seizure order issued

by the United States District Court for the Southern District of Florida, WWE seized hundreds of counterfeit shirts.  Most of those shirts were child-sized and emitted a strong unknown chemical odor, which further increases and heightens the public safety concern.

34.    Evidencing and confirming the coordinated nature of Defendants' illegal activities, two of the counterfeiters who were served in Miami, Florida in 2012 had previously been served at WrestleMania® 24 in Orlando, Florida in 2008 pursuant to an ex parte TRO and seizure order.  In addition, as described in more detail below, two of the defendants who were served in **Miami, Florida in 2012** were served again in **New Orleans, Louisiana in 2014.**  These facts establish Defendants complete disregard for the law and their intent to follow WWE Live Events around the United States.

35.    In 2013, WWE's WrestleMania® 29 was held in this District in East Rutherford, New Jersey. WWE again encountered numerous counterfeiters from various states selling bootleg merchandise.  In the course of enforcing an ex parte TRO and seizure order issued by this Court, WWE seized thousands of counterfeit T-shirts, DVDs, action figures and posterboards.  WWE also obtained a consented to permanent injunction against one of the counterfeiters that WWE served in connection with the court's TRO and seizure order.

36.     In 2014, WWE's WrestleMania® 30 events were held in New Orleans, Louisiana.  Initially, the United States District Court for the Eastern District of Louisiana denied WWE's request for an ex parte TRO and seizure order on the ground that WWE had not pleaded sufficient specific facts about the unknown counterfeiters' identities.  WWE appealed that order and the Court of Appeals for the Fifth Circuit vacated the decision and held that WWE, based upon similar allegations to those alleged here, had established its entitlement to a TRO and Seizure Order.

37.     Without the benefit of a TRO and seizure order, WWE's ability to combat counterfeit sales was significantly hampered.  However, WWE was able to identify the putative names of four individuals who were caught selling counterfeit merchandise.   WWE was not able to obtain contact information for all four individuals, and the contact information it did obtain turned out to be false.

38.     WWE filed two amended Motions for TRO and Seizure Order against the four identified individuals, which the United States District Court for the Eastern District of Louisiana granted.  As alleged above, two of the identified individuals had been previously served in Miami in 2012 pursuant to an ex parte TRO and seizure order granted by the Southern District of Florida in connection with WrestleMania® 28.   The individuals did not participate in the Southern

17

District of Florida proceeding and likewise failed to return process or enter an appearance in the Eastern District of Louisiana's proceeding.

39.     In 2015, WWE obtained and enforced an <u>ex parte</u> TRO and seizure order issued by the United States District Court for the Northern District of California at the WrestleMania® 31 events in San Jose and Santa Clara, California. In connection with the Northern District of California's order, WWE served several counterfeiters and seized their counterfeit merchandise.     After the WrestleMania® 31 events, WWE entered into a settlement agreement that permanently enjoined three of the named counterfeiters.

40.     In 2016, the United States District Court for the Northern District of Texas issued WWE an <u>ex parte</u> TRO and seizure order for WWE's WrestleMania® 32 events in Dallas and Arlington, Texas.    With the assistance of local law enforcement, WWE was able to obtain the names of several counterfeiters and obtained a permanent injunction against two of the counterfeiters that WWE served in connection with the court's TRO and seizure order.

41.     In 2017, the United States District Court for the Middle District of Florida issued WWE an <u>ex parte</u> TRO and seizure order for WWE's WrestleMania® 33 events in Orlando, Florida.    Pursuant to the court's order, WWE seized hundreds of counterfeit items and served four individuals, including one individual who had traveled nearly 500 miles from Canton, Georgia.

42.     In 2018, the United States District Court for the Eastern District of Louisiana issued WWE an ex parte TRO and seizure order for WWE's WrestleMania® 34 events in New Orleans, Louisiana.  However, due to the large police presence, WWE did not serve any bootleggers.  Thereafter, WWE dismissed the case without prejudice and without moving for any additional relief from the court.

43.     Since WWE's WrestleMania® 34 events, WWE has continued to encounter counterfeiters at its Live Events.  For instance, on July 8, 2018, WWE encountered numerous counterfeiters at the WWE RAW® event held in Bridgeport, CT at the Webster Bank Arena. These counterfeiters were selling "WWE® Live SummerSlam Heatwave Tour 2018" shirts that displayed counterfeit WWE Marks on the front and a list of WWE event locations on the back.  A few weeks later, the identical counterfeit merchandise was being sold at a WWE live event held in Brooklyn, NY at the Barclays Center.

44.     Similarly, on January 8, 2019, WWE encountered counterfeit merchandise at its WWE Smackdown® Live event held in Jacksonville, FL at Jacksonville Veterans Memorial Arena.  The counterfeit merchandise consisted of "WWE® Live" shirts that displayed counterfeit WWE Marks and Superstars on the front and a list of WWE® Live events on the back.  A week later, WWE encountered similar counterfeit merchandise its WWE® Live event held in

Louisiana, Kentucky at the Rupp Arena. The counterfeit merchandise in Kentucky was similar to that found in Florida in that the merchandise displayed "WWE® Live" with counterfeit WWE Marks and Superstars on the front and a list of WWE® Live events on the back, including listing the WrestleMania® 35 event in East Rutherford, New Jersey.  In addition, the individuals who were selling the counterfeit merchandise in Kentucky also were selling WWE counterfeit merchandise in West Virginia three days earlier.  Based on these experiences and WWE's prior experience, WWE believes and asserts that Defendants have and will continue to sell this Counterfeit Merchandise and others like it in this District and across the United States.

45.    At no time has WWE authorized Defendants to manufacture, distribute, offer for sale or sell any Counterfeit Merchandise, nor any WWE Merchandise or goods or materials bearing the WWE Marks not specifically licensed and approved by WWE.

46.    Based upon its investigation into the matter, and as described more fully in the Declaration of Lauren Dienes-Middlen, Esq., which was filed concurrently with the Verified Complaint and is incorporated herein by reference, WWE has observed that the design, materials and quality of most of the Counterfeit Merchandise being distributed and sold at WWE live events throughout the United States is poor and uniform from event to event and city to

city.  As set forth above, WWE has encountered Counterfeit Merchandise that lists multiple WWE live events making it easy for such merchandise to be sold from venue to venue.  Based in part on this uniformity, WWE believes and avers that Defendants distributing and selling Counterfeit Merchandise are part of a concerted operation that travels and works together from venue to venue to sell unauthorized Counterfeit Merchandise likely acquired from common sources of manufacture.  Many of the individual Defendants sell the same Counterfeit Merchandise in different cities.  Groups of these individuals travel together from event to event, including in the District of New Jersey.

47.    Thus, without the aid of a federal court order authorizing seizure of Counterfeit Merchandise, WWE is unable to combat the network of individuals and entities distributing and selling unauthorized Counterfeit Merchandise WWE's 2019-2020 Live Events and is effectively rendered unable to protect its rights, and the rights of the consuming public, against the unauthorized and unlawful distribution and sale of Counterfeit Merchandise at WWE's 2019-2020 Live Events.

48.    As demonstrated by the Dienes-Middlen Declaration, throughout the past several years of WWE live events, WWE has encountered numerous sellers of Counterfeit Merchandise at various locations throughout the United States.

49.    During the course of WWE's enforcement of TROs, Seizure Orders and preliminary injunctions entered by this Court and others (*see* ¶¶ 29-44), WWE has been able to eliminate thousands of counterfeit T-shirts, caps, wrestling masks, posters, DVDs, pictures and other items of Counterfeit Merchandise marked with imitations of the WWE Marks and sold to WWE's loyal fans.  As a result of WWE's ability to seize Counterfeit Merchandise, WWE was able to avoid some lost sales and, more importantly, lessen the irreparable injury to WWE's reputation and goodwill with the consuming public that is caused by Defendants' illegal conduct.  In addition, as a result of WWE's ability to seize Counterfeit Merchandise, WWE was able to protect the safety of the public, including children, against potential harmful effects of such uncontrolled, inferior and potentially dangerous goods.

50.    Pursuant to past TROs, Seizure Orders and nationwide preliminary injunctions, WWE has posted a bond and proceeded at all times with the utmost caution in seizing only those goods that WWE's enforcement team determined to be Counterfeit Merchandise.  WWE has enforced the TROs, Seizure Orders and nationwide preliminary injunctions in a manner designed to protect its trademarks and service marks without compromising any rights of the Defendants in those actions.

51.    Many of the individuals served under these prior TROs, Seizure Orders and nationwide preliminary injunctions refused to identify themselves, refused to accept service, or both.  In addition, with respect to those that do not accept service, many of them provide fake identification. Moreover, none of the Defendants in those actions came forward with objections to the court.  Such behavior is typical of counterfeiters who distribute and sell unauthorized merchandise at live entertainment events.

52.    The TROs, Seizure Orders and nationwide preliminary injunctions issued in the past enabled WWE to effectively police distribution and sale of Counterfeit Merchandise throughout WWE's nationwide series of live events, without incident.  Defendants' conduct, however, represents a continuing problem, not yet abated, and the only effective relief available to WWE is the ex parte seizure process.

53.    Without the ability to seize Counterfeit Merchandise at and near WWE's 2019-2020 Live Event venues, WWE stands (i) to lose merchandise sales; (ii) to suffer incalculable, irreparable damage to its reputation and goodwill; and (iii) to lose the ability to protect the safety of WWE's fans -- who specifically decide to buy tickets and attend WWE's live events -- against potential harmful effects of the inferior and potentially dangerous Counterfeit Merchandise sold right outside WWE's live events.

C.    <u>Counterfeiting at WrestleMania® 35 Event and Expected Counterfeiting Elsewhere</u>

54.    WWE's WrestleMania® 35 event occurred on April 7, 2019 at MetLife Stadium. In addition to the WrestleMania® 35 event, WWE hosted several additional events in New York both before and after the WrestleMania® 35 event, including WWE's NXT Blacklist and Takeover events, WWE's Hall of Fame event, WWE's RAW® and Smackdown® televised events. WWE's 2019-2020 Live Events will proceed throughout the United States according to the schedule attached hereto as Exhibit 3.

55.    WWE heavily advertised and promoted its WrestleMania® 35 Weekend Events and remaining 2019-2020 Live Events, and will continue to advertise and promote heavily the 2019-2020 Live Events using the WWE Marks.

56.    As WWE has demonstrated through its filings in this case, the only effective means of protecting WWE's trademarks and service marks from unlawful counterfeiting by Defendants at WWE's 2019-2020 Live Events is through the <u>ex parte</u> seizure process, which provides WWE with the ability to fight against unlawful counterfeiting. To maintain any meaningful defense against the unlawful distribution and sale by Defendants of Counterfeit Merchandise at WWE's 2019-2020 Live Events, which is an ongoing problem inherent in the live entertainment industry, WWE must be allowed to proceed with the <u>ex parte</u> seizure process.

303222269 v1

57.     Indeed, Defendants are habitual "repeat offenders" who refuse to identify themselves or accept service, much less appear in court in connection with the seizure of their unlawful goods.  Aware of the illegality of their activities, these individuals and groups, if caught, will quickly hide or dispose of their Counterfeit Merchandise, or load it into a waiting vehicle and lock the vehicle or drive it away. Most sellers have only a small number of items at any given time and their supply is replenished after being seized by WWE.

58.     In fact, WWE has encountered this exact modus operandi consistently over the years and again in connection with its WrestleMania® 35 event.   As predicted, Defendants were from different cities and even states (New York and South Carolina) and yet the designs of the Counterfeit Merchandise was identical were identical. Thus, it is clear that Defendants are organized and acting in concert with one another.  Some also would not provide their names or addresses to hide their identities.

59.     Defendants are without offices, identification, licenses or addresses. In this manner, they can avoid having to respond to an ordinary civil lawsuit and thus are essentially immune from an injunction unless it is accompanied by authority to seize Counterfeit Merchandise.

60.     For example, through the enforcement of ex parte TROs, Seizure Orders and nationwide preliminary injunctions, WWE has attempted to serve

hundreds of counterfeiters and has seized thousands of items of Counterfeit Merchandise.  Most of the apprehended counterfeiters, who not only appear at the venues where the event is occurring but also in the parking areas at the venues and on the roads that led to the venues, refused to identify themselves and refused to accept service, and none of them came forward to respond formally in court. WWE would welcome their appearances in court, as it would permit WWE to identify the bootleggers, take discovery from them, discover their manufacturing and printing sources and pursue them for money damages.

61.    Defendant bootleggers will continue, undaunted, to attempt to peddle Counterfeit Merchandise at WWE's 2019-2020 Live Events, and WWE's only means of keeping their conduct under control is through the ex parte seizure process.

62.    Based upon the foregoing, the facts described in the Supplemental Declaration of Lauren Dienes-Middlen filed concurrently herewith, and based upon WWE's experience enforcing earlier TROs, Seizure Orders and nationwide preliminary injunctions as explained in the Dienes-Middlen Declaration previously filed, WWE believes and therefore avers that Defendants will follow WWE's 2019-2020 Live Events from city to city, throughout the country, selling Counterfeit Merchandise.  Defendants constitute bootlegging rings that operate in

this District by obtaining Counterfeit Merchandise from a small number of manufacturers.

63.     On information and belief, the named and unnamed Defendants will continue to attempt to sell Counterfeit WWE Merchandise at WWE's 2019-2020 Live Events.

64.     <u>Ex</u> <u>parte</u> seizure relief is thus essential if WWE is to maintain a defense against and effectively police the unlawful activities of Defendants at the WWE 2019-2020 Live Events.  Without such relief, WWE will have no effective remedy against Defendants' continued distribution and sale of Counterfeit Merchandise that infringes WWE's registered and unregistered trademarks and service marks, threatens lost sales in untold dollars, deceives the consuming public into mistakenly believing they are purchasing authorized, licensed, high quality goods, and poses a potential safety risk because of the inability for WWE to control the quality of the materials used by the bootleggers.

**D.     <u>Irreparable Harm to WWE</u>**

65.     Defendants' use of counterfeits of the WWE Marks on the Counterfeit Merchandise will deceive the consuming public into believing that they are purchasing genuine goods which have been manufactured, authorized, or approved by WWE, and will likely cause confusion and mistake in that consumers are likely

to assume that WWE has manufactured, authorized, or approved the Counterfeit Merchandise sold by Defendants.

66.     In addition to causing WWE to suffer incalculable, irrecoverable and irreparable lost sales, Defendants' manufacture, distribution and sale of inferior quality Counterfeit Merchandise displaying the WWE Marks will irreparably injure WWE's reputation for the manufacture and sale of the highest quality souvenirs, merchandise, and memorabilia and poses a potential safety risk to the public because WWE is unable to control the quality of the materials used by the bootleggers.  Indeed, there is no way to know the quality of the counterfeit goods, such as the flammability level of the ink used to print the t-shirts and the safety of the design of other goods, such as wrestling masks, that previously have been seized.  For example, much of the counterfeit merchandise seized at prior WrestleMania® events consisted of child-sized t-shirts and emitted a strong unknown chemical odor, which further increases and heightens the public safety concern.

67.     Based on WWE's prior encounters with sellers of Counterfeit Merchandise at live events, other WWE events, and in the retail and wholesale distribution context, on information and belief, WWE alleges that if injunctive relief, including a seizure order, were not granted, Defendants will cause the unauthorized Counterfeit Merchandise to be dispersed and, thereafter, sold at other

locations on or near the premises of the event arenas or elsewhere with the result that WWE will be unable to obtain an effective remedy for Defendants' wrongful conduct.

## COUNT I
## Trademark Infringement (Registered Marks)

68.  Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 67 of this Amended Complaint.

69.  The WWE Marks on WWE Merchandise have become well and favorably known to consumers throughout the United States, including New Jersey, as an indication of goods emanating from or authorized by a single source, i.e., WWE.

70.  Defendants' use of counterfeits of the WWE Marks on the Counterfeit Merchandise constitutes infringement of WWE's registered trademarks in violation of § 32 of the Lanham Act, 15 U.S.C. § 1114.

71.  The threat of the loss of WWE's right to control the use of its marks and the reputation of its goods is real and substantial.  This loss is further enhanced by the inferior quality of Defendants' Counterfeit Merchandise.

72.  Defendants' acts described herein will infringe the WWE Marks, will injure WWE's business, reputation, and goodwill, and unless restrained and enjoined will continue to do so, all to WWE's monetary damage and irreparable harm.

## COUNT II
### Trademark Infringement (Unregistered Marks) And False Designation Of Origin

73.     Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 67 of this Amended Complaint.

74.     Defendants' use of the WWE Marks on the Counterfeit Merchandise constitutes infringement of WWE's unregistered trademarks in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

75.     Defendants' use of the WWE Marks on the Counterfeit Merchandise creates a false designation of origin and a false representation of Defendants' goods, all in violation of § 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

76.     The threat of the loss of WWE's right to control the use of its marks and the reputation of its goods is real and substantial.  This loss is further enhanced by the inferior quality of Defendants' Counterfeit Merchandise.

77.     Defendants' acts described herein will infringe the WWE Marks, will injure WWE's business, reputation, and goodwill, and unless restrained and enjoined, will continue to do so, all to WWE's monetary damage and irreparable harm.

303222269 v1

## COUNT III
## Federal Trademark Dilution

78.     Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 67 of this Amended Complaint.

79.     As a result of the duration and extent of WWE's use and promotion of the WWE Marks, at least WWE®, WWE® logo, Raw®, Smackdown®, WrestleMania®, SummerSlam®, Royal Rumble®, Survivor Series® and names and likenesses of several of its current wrestlers are famous and highly distinctive.

80.     Defendants are making commercial use of these WWE marks in interstate commerce.

81.     Defendants' use began long after these WWE marks became famous.

82.     Defendants' use of these WWE marks dilutes the distinctive quality of the marks by diminishing the capacity of the marks to identify and distinguish WWE's goods and services, in violation of § 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

83.     Defendants willfully intended to trade on WWE's reputation and goodwill, and to cause dilution of WWE's famous marks.

84.     Defendants' conduct has caused and continues to cause WWE immediate and irreparable injury.  WWE lacks an adequate remedy at law.

303222269 v1

## COUNT IV
### Trafficking In Counterfeit Goods

85.     Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 67 of this Amended Complaint.

86.     Defendants' souvenirs, merchandise, and memorabilia constitute goods bearing counterfeit marks.   Defendants have trafficked these goods in violation of the Trademark Counterfeiting Act of 1984, 15 U.S.C. § 1116(d) and unless restrained and enjoined, will continue to traffic these goods, all to WWE's monetary damage and irreparable harm.

## COUNT V
### Trademark Infringement and
### Unfair Competition, Under New Jersey Law

87.     Plaintiff hereby re-alleges, as if fully set forth herein, paragraphs 1 through 67 of this Amended Complaint.

88.     The WWE Marks are marks valid at common law.

89.     Defendants' unauthorized use of the WWE Marks is likely to cause confusion, or mistake or to deceive as to the source of Defendants' goods and services, which constitutes trademark infringement and dilution under the common law of New Jersey.

90.     Defendants' unauthorized use of the WWE Marks constitutes trademark infringement, trademark dilution and unfair competition under New

303222269 v1

Jersey common law and the New Jersey unfair competition statute, N.J. Stat. Ann. § 56:4-1.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff World Wrestling Entertainment, Inc. respectfully prays:

1.     That this Court grant a preliminary and permanent injunction enjoining Defendants and each of his, her, or their partners, associates, agents, servants, and employees, and all other bootleggers acting in concert therewith or having knowledge thereof, from manufacturing, distributing, offering for sale or selling Counterfeit Merchandise.

2.     That this Court order that all Counterfeit Merchandise and any records documenting the manufacture, sale, or distribution of Counterfeit Merchandise, found in the possession, custody, or control of Defendants be seized until a hearing can be held before this Court to determine the disposition of any goods so seized.

3.     That this Court order that all Counterfeit Merchandise and any records documenting the manufacture, sale, or distribution of Counterfeit Merchandise, seized  pursuant to this Court's orders shall be delivered up to WWE, WWE's agents, or WWE's attorneys pending the outcome of this action.

4.     That Defendants be required to account to and reimburse WWE for any and all profits which Defendants have derived from the sale of any Counterfeit

303222269 v1

Merchandise and for any and all damages which WWE has sustained by reason of the acts complained of herein, or statutory damages.

5.      That Defendants be required to pay treble the amount of any profits derived from the sale of any Counterfeit Merchandise.

6.      That this Court award WWE its cost and reasonable attorneys' fees in this action.

7.      That this Court grant such other and further relief as it deems just and appropriate under the circumstances.

303222269 v1

## <u>DEMAND FOR JURY TRIAL</u>

Plaintiff World Wrestling Entertainment, Inc. hereby demands a trial by jury of all issues so triable.

Respectfully Submitted,

/s/ Loly G. Tor
Loly G. Tor
K&L Gates LLP
One Newark Center, Tenth Floor
Newark, NJ 07102
Telephone: (973) 848-4026
Fax: (973) 848-4001
E-mail: loly.tor@klgates.com

Jerry S. McDevitt (*pro hac vice* motion to be filed)
E-mail: jerry.mcdevitt@klgates.com
Curtis B. Krasik (*pro hac vice* motion to be filed)
E-mail: curtis.krasik@klgates.com
Christopher M. Verdini (admitted *pro hac vice*)
E-mail: christopher.verdini@klgates.com
K&L Gates LLP
K&L Gates Center
210 Sixth Ave.
Pittsburgh, Pennsylvania 15222
Telephone: (412) 355-6500
Facsimile: (412) 355-6501
*Attorneys for World Wrestling Entertainment, Inc.*

Dated: April 12, 2019

303222269 v1

## VERIFICATION

I am Senior Vice President, Assistant General Counsel - Intellectual Property, Business and Legal Affairs of Plaintiff World Wrestling Entertainment, Inc.  The allegations in the foregoing Amended Complaint that relate or refer to World Wrestling Entertainment, Inc. are true to my own knowledge and as to those allegations that relate or refer to Defendants' activities and that are alleged upon information and belief, I believe them to be true.  I verify under penalty of perjury that the foregoing is true and correct.

Executed this 11th day of April, 2019 in Stamford, Connecticut.

_____

Lauren A. Dienes-Middlen
Senior Vice President, Assistant General Counsel
Intellectual Property, Business and Legal Affairs
World Wrestling Entertainment, Inc.